MAVIS SEEK DAHLIN v. JOHN KRON AND ANOTHER.[1]

December 29, 1950.

No. 35,252.

---

[1]Reported in 45 N. W. (2d) 833.

*Frank J. Zima, Jr.,* for appellant.

*Freeman, King, Larson & Peterson* and *Robert L. Hoppe,* for respondent John Hutchinson.

*Joseph J. Granbeck* and *Lyle Pettijohn* appeared for respondent John Kron in the trial court, but filed no brief and made no appearance on his behalf in this court.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying plaintiff's motion for a new trial on certain issues.

This action arose out of an automobile accident which occurred on road No. 3, Hennepin county, about 2 a. m. on August 22, 1948. Defendants, John Kron and John Hutchinson, and a companion, Harold C. T. Wind, all about 20 or 21 years of age at the time of the accident, had spent most of the afternoon of August 21 together in various recreational places or pool halls in Minneapolis. All admitted that they had been drinking beer in those places, but claimed that they had not been drinking to the extent of being intoxicated or under the influence of intoxicating liquor. They met again that evening with three girl friends whom they had dated earlier, among them plaintiff, aged 22 years. Hutchinson and Wind, with their girl friends, rode in Hutchinson's Pontiac automobile, and Kron and plaintiff were in Kron's Chevrolet. The young people visited several taverns that evening, and there was testimony that there was some drinking of beer or whiskey by them all. They finally arrived at a roadhouse called Jack Hines Place on county road

No. 3 about 11 p. m., where they remained until about two o'clock in the morning. The record shows further drinking of either beer or whiskey by all members of the party at that place, where they visited and danced.

When the group left Jack's place, they apparently planned on going to Bryant's Long Lake. Hutchinson, Wind, and their companions left first in Hutchinson's car, and Kron and plaintiff followed in the Chevrolet. They proceeded along county road No. 3 toward their new destination for about a mile and a half, when Hutchinson, who testified that he was familiar with the road, slowed down to about 30 miles an hour because of a "bad curve ahead." He said that at about the time he did so Kron passed his car, which appears from the testimony to have been on its right side of the road, with the exception of plaintiff's statement that "he seemed to be in the middle of the road." There was some reference to "racing" at that time, but as to this the evidence is not persuasive. Plaintiff was not sure whether Kron sounded his horn as he passed Hutchinson, but she thought he did. Kron had no recollection that he sounded his horn at that time. Plaintiff said that Hutchinson was driving at a normal rate of speed when they started to pass; that Hutchinson speeded up a little; and that Kron then "speeded up a little bit and he seemed to turn to the right too much, and he went off the road." Hutchinson "would guess" that the Kron car was going about 30 or 35 miles an hour, "maybe not that fast," when it went through the guardrail, but he did not know how fast he (Hutchinson) was traveling at the time, "because I had, of course, slowed down because I knew there was a bad curve ahead, and he [Kron] didn't know." Hutchinson said that he stopped his car about 100 feet back of the place where Kron's car went through the guardrail.

Wind, a passenger in the Hutchinson car, testified that the Kron car passed them about a block back of the place where it ran off the road; that the Kron car did not come near the Hutchinson car in passing—that there was no contact between the two cars in

passing. He estimated that the Hutchinson car stopped about 150 to 200 feet before reaching the place where the other car went off the road.

Kron, the driver of the ill-fated car, testified substantially the same as the other boys as to what they did during the afternoon and evening. He said that the boys shared about equally the expense of the drinks and incidental expenses for the evening, and he thought that they "chipped in" to pay for two pints of liquor. He did not remember that Hutchinson bought him any drinks, and he said that the group danced, smoked, and talked while at Jack's place. He said that they left that place a little before two o'clock and that the accident happened about 2:10 or 2:15 a. m. He testified that they went directly from Jack's place to the place where the accident happened, but he was not sure about the distance, since it was the only time he had been out there. He testified that Hutchinson was sober. Kron said that he passed the Hutchinson car only once; that when he did so Hutchinson did not increase his speed, turn toward him, or interfere in any way with his passing; that the Hutchinson car did not pass him at any time from Jack's place to the scene of the accident; and that Hutchinson was driving 30 miles an hour when he passed him. When questioned whether the Hutchinson car gave way to the right as he passed him, Kron replied: "Well, he was in his right of way and I just passed him. I had plenty of room." He said that in passing the two cars were a few feet apart as they drew abreast of each other.

The jury returned a verdict of $2,434.50 against Kron, but found in favor of Hutchinson. It is difficult to determine from plaintiff's notice the exact nature of her appeal. It reads in part as follows:

"* * * plaintiff, appeals * * * from the order * * * denying plaintiff's motion for an order setting aside the verdict rendered herein by the jury, and granting to the plaintiff a new trial on damages only against both defendants, and for an order setting aside the verdict rendered by the jury and granting plaintiff a new trial on the question of damages only against defendant John Kron

and against defendant John Hutchinson on the question of negligence on the part of defendant John Hutchinson, the proximate cause of said negligence in causing the accident as set forth in plaintiff's complaint herein, and the question of damages that plaintiff is entitled to recover from said defendant, and from the whole thereof."

Plaintiff assigns as error that the court erred in denying her motion for a new trial; that the verdict is not justified by the evidence and is contrary to law; and errors of law occurring at the trial. She also makes other assignments of error in connection with the refusal or failure of the court to give certain instructions; in connection with certain instructions given; and other claimed errors. We deem it necessary to consider only some of those assignments.

Kron filed no brief, nor did he appear in connection with the appeal to this court. Hutchinson filed a brief in this court and was represented by counsel when the appeal was heard here.

As to defendant Hutchinson, plaintiff contends that by virtue of M. S. A. 340.95 Hutchinson should be held liable for damages to her for getting Kron intoxicated. Section 340.95 provides in part as follows:

"Every husband, wife, child, parent, guardian, employer, or other person who is injured in person or property, or means of support, by any intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against any person who, by illegally selling, bartering or giving intoxicating liquors, caused the intoxication of such person, for all damages, sustained; * * *."

We cannot see that the statute is applicable under the facts and circumstances of the instant case. The evidence presented does not establish that Kron was intoxicated. Plaintiff herself testified that he was sober when he got into the car at Jack's place shortly before the accident. Neither is it convincing that Hutchinson furnished the liquor. Apparently the boys all "chipped in" to buy it. It is also

apparent that all the boys did their own drinking without any particular urging from the others. The trial court made it clear in its instructions that liquor was involved in the case when it said:

"* * * There is no question in this case but what there was considerable drinking throughout this evening. That is not denied. The way liquor comes into the case is simply this. Did the fact that they had drunk liquor, either of them, either Mr. Kron or Mr. Hutchinson, affect their ability to drive an automobile? The liquor was taken voluntarily. That is the only way you have any concern or I have any concern with the drinking of liquor, whether or not it so affected them that their reactions and their minds and their bodies were not in proper shape to drive an automobile, and that that was a cause, or a proximate cause as we say, of the accident."

The court then instructed the jury on the question of negligence and proximate cause, giving in plain, understandable language the definitions of negligence and proximate cause.

Neither do we consider it reversible error under the facts and circumstances here that the court failed to instruct the jury under § 169.12 that it is unlawful for any person who is a habitual user of narcotic drugs or under the influence of intoxicating liquor to drive or operate any vehicle within the state. There was no testimony as to the use of narcotic drugs, nor does the evidence offered establish that either of the defendants was under the influence of intoxicating liquor.

The record is replete with testimony with reference to the amount of drinking done by the various members of the party during the afternoon and evening. It appears to us that the court permitted plaintiff to go a long way in bringing this matter before the jury. We see no reversible error so far as that phase of the case is concerned.

After a careful review of the record, the court's charge to the jury, and the court's memorandum, we conclude that plaintiff is entitled to no relief against defendant Hutchinson.

We have here a situation where a party of young people went out for an evening of entertainment, such as it was. There is evidence of drinking, and apparently they all did about the same amount of drinking that evening. As stated, the evidence does not establish that any of the members of the party were under the influence of intoxicating liquor or were intoxicated. Plaintiff testified that she and Kron were sober when they entered Kron's car shortly before the accident. One of the officers who investigated the accident after it happened, when questioned whether Kron appeared to be normal, stated: "Well, to a certain extent probably, but he showed that he had been drinking, his eyes showed he had been drinking." He could not say whether Hutchinson had been drinking, since he did not pay any particular attention to him. The case appears to us to be just another one of those unfortunate Saturday night and early Sunday morning affairs which ended disastrously especially so far as plaintiff was concerned. Viewing the evidence in the light most favorable to the prevailing party so far as Hutchinson is concerned, we can find nothing in the record to justify the relief asked for as against him. He appears to have been driving along the highway on his right side of the road at a legal rate of speed when Kron passed his car. There was no contact or collision between the cars as Kron, who claims that he had plenty of room, passed the Hutchinson car. According to plaintiff, Hutchinson speeded up a little, and then Kron speeded up and "seemed to turn to the right too much, and he went off the road." Hutchinson stopped his car from 100 to 200 feet to the rear of the place where the accident occurred. It was a fact question as to his negligence and, if negligent, as to its being the proximate cause of the accident. The jury found in favor of Hutchinson, and we cannot disturb the verdict under the testimony here.

Plaintiff argues under her first four assignments of error that she is entitled to a new trial on the question of damages only against both defendants, or at least a new trial on damages only against defendant Kron, and on all issues, except the contributory negligence of plaintiff withdrawn by stipulation, against defendant

Hutchinson. As already stated, we find no reversible error that would justify a new trial against Hutchinson. She further argues that Kron could be guilty only of negligence as a matter of law by reason of the amount of liquor he consumed and the fact that he passed the other car on a curve. We need not consider that part of her argument further, since the jury found that Kron was negligent and returned a verdict against him.

Plaintiff next contends that she is entitled to a new trial on the issue of damages only as against Kron, if there was error in the court's ruling or charge affecting the question of damages or if the damages given by the jury were inadequate. If there is any reversible issue raised here at all, it is in connection with certain rulings of the court which might have affected the amount of the damages awarded against defendant Kron.

The trial court states that the damages are low, but that they are not so unreasonably low as to justify the granting of a new trial. Plaintiff's argument to the jury was somewhat conducive to a low verdict so far as Kron was concerned. Her counsel said in part:

"* * * In my own mind and in my heart I don't think that Mr. Kron is to blame for this accident. * * * As far as I am concerned, you can do whatever you want. You can hold them both if you want to, but in my own mind I would feel more satisfied that justice was actually done if you would leave John Kron out of it."

Plaintiff assigns as error that the court refused to permit her witness Dr. Albert T. Hays to testify concerning the value of doctor's services furnished her while she was a patient in General Hospital. When plaintiff offered to prove the reasonable value of such doctor's services, objection was made thereto because of lack of foundation and upon the ground that it was not a proper item of damage. The court sustained the objection in these words:

"I will sustain the objection unless it is shown, as I indicated before, first a greater foundation as far as this man is concerned [referring to Dr. Hays]; second, unless it is shown that the charge

will be made against her. It isn't going to be made, it is being done by the State."

The court apparently sustained the objection on the two grounds, to wit, that (1) a proper foundation was not laid as to Dr. Hays; and (2) that the reasonable value of her medical services while confined as a patient in General Hospital was not a proper item of damage, inasmuch as she was not charged for such services.

Counsel for plaintiff made no further effort to lay any additional foundation as to Dr. Hays, but we need not pass on that question inasmuch as the trial court, by the second part of its statement, precluded plaintiff from showing the reasonable value of such medical services even if a proper foundation had been laid. It appears to have been the position of the court that unless it was shown that the medical services rendered plaintiff while a patient in General Hospital were charged against her she could not recover the value of such services as a part of her compensatory damages. The court then took the position that such medical services were not going to be charged against plaintiff, but that they were to be paid for by the state. It is our opinion that even though the doctor's services furnished to plaintiff while at General Hospital were rendered gratuitously or were paid for by the hospital she was still entitled to recover the value of such services as part of her compensatory damages.

"The fact that medical attention and nursing have been rendered gratuitously to one injured by the wrongful act of another will not preclude the injured party from recovering the value of such services as a part of his compensatory damages. Accordingly, the defendant cannot take advantage of the fact that the doctor's bill and expenses were paid for the plaintiff by a beneficial society, by members of his family, by his employer, or by other persons, nor is it material that the plaintiff is a physician and that it is the general custom of physicians to attend upon each other, in case of sickness or injury, free of charge. Likewise, a recovery may be had though such services were rendered by members of the injured party's family,

even though there is no proof of an agreement to pay for them, though they were rendered without expectation of payment, * * *." 15 Am. Jur., Damages, § 199.

Cited under this section is Wells v. Minneapolis B. & A. Assn. 122 Minn. 327, 333, 142 N. W. 706, 708, 46 L.R.A.(N.S.) 606, Ann. Cas. 1914D, 922, where we said:

"We adopt the rule followed in Iowa, Indiana, and Wisconsin to the effect that a plaintiff, who is entitled to recover special damages for nursing in a personal injury action, may recover the reasonable value thereof even though the nursing was rendered by a member of the family without expectation of compensation."

In Van House v. C. N. Ry. Co. 155 Minn. 65, 67, 192 N. W. 496, 497, we said:

"As to the second point, we are of the opinion that a husband should be allowed to recover the reasonable value of his own services in attendance upon his wife made necessary by reason of her injuries. He owes her the duty of care and nursing. If he devotes his own time and services to the discharge of the duty, he should be allowed as much as he would have had to expend in hiring reasonably competent attendance and nursing by others." (Citing Wells v. Minneapolis Baseball & Athletic Assn. *supra*.)

"The majority of the relatively few cases involving the point take the view that a parent suing for injuries to his minor child may recover the value of services rendered gratuitously by the other parent or by members of the family, such services being necessitated by the injuries in question." Annotation, 128 A. L. R. 702.

We do not think that the above error was cured by the trial court in its instructions to the jury when it said:

"* * * First of all, you must determine to what extent she was injured. * * * You should also take into consideration her loss of earning capacity and the money that she has lost and will lose in the future. Also, whatever sums are necessary by way of medical

and hospital bills to heal her, reasonable sum. Also you should consider the hospital bill of the General Hospital."

We feel that under the circumstances here the jury must have been led to believe that the doctor's services at General Hospital during the 39 days that plaintiff was confined there were not a proper item to be considered by it in computing damages. For that reason, we believe that in the interest of justice a new trial should be granted against defendant Kron on the issue of damages only.

In remanding this case for a new trial on that question alone, we are not passing on the question of the inadequacy of damages raised by plaintiff in her brief. Neither are we considering further the objections raised by plaintiff with reference to the conduct of the trial judge, since we do not feel that on this phase the case comes within the scope of Hansen v. St. Paul City Ry. Co. 231 Minn. 354, 43 N. W. (2d) 260. We there said that the responsibility of striving for an atmosphere of impartiality during the course of a trial rests upon the trial judge. A careful review of the record here indicates that the trial judge extended a great deal of latitude to plaintiff in permitting her to present her case. If at times he admonished plaintiff's counsel with reference to the time he was consuming in bringing out certain detailed matters which the court might have considered unnecessary or in making statements to the jury which the court considered improper, we feel that the court was within its rights and that there was no reversible error on those grounds.

Reversed with instructions to grant a new trial against defendant Kron alone on the question of damages only.

Reversed.