LOCAL 1140, INTERNATIONAL UNION OF ELECTRICAL, RADIO & MACHINE WORKERS, AFL-CIO, AND OTHERS v. MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY AND OTHERS.

165 N. W. (2d) 234.

February 21, 1969—No. 41230.

*Dorsey, Marquart, Windhorst, West & Halladay, Bernard G. Heinzen, David A. Ranheim,* and *Curtis D. Forslund,* for appellants.

*Helgesen, Peterson, Engberg & Spector, Francis X. Helgesen,* and *Avron L. Gordon,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Rogosheske, JJ.

MURPHY, JUSTICE.

This is an appeal from an order denying defendants' motion for amended findings or, in the alternative, for a new trial in an action for a declaratory judgment by which plaintiffs, Local 1140, International Union of Electrical, Radio and Machine Workers, AFL-CIO, an unincorporated society and labor organization, and Stanley W. Lipa and Robert Striebel, two members of the local, sought to establish liability for medical expenses incurred under a group policy issued by defendant Massachusetts Mutual Life Insurance Company. Also joined as defendants were Fairview Hospital, The Swedish Hospital, and the employer of Striebel and Lipa, Dayton Rogers Manufacturing Company. By the terms of the policy, the employees of the Dayton Rogers company were insured for expenses incurred in connection with confinement in hospitals for illnesses. Defendant insurance company contends that the trial court was in error in holding that the insured employees were entitled to credit for the value of whole blood furnished to the employees, which blood was taken from a pool contributed to by a donor group to which the employees belonged.

From the record it appears that Lipa and Striebel, in addition to being employees of the Dayton Rogers Manufacturing Company, are members of the Dayton Rogers Donor Club, which donates blood to the Minneapolis War Memorial Blood Bank,Inc., to replace blood given to individual members in the event of illness. Defendant insurance company sold a

group insurance policy to Dayton Rogers which provided hospital and medical coverage to member employees, including the individual plaintiffs, and their dependents. The following provisions of the policy, the meaning of which gives rise to this litigation, state:

"Part XIV — Section I.

"1. If an employee, while insured under this Part, incurs expense because of confinement in a hospital * * * the Massachusetts Mutual upon receipt of due proof of such expense will pay to such employee for any period of confinement * * *

\* \* \* \* \* \*

"b. a benefit in the amount of the charges other than for room and board made by the hospital for medical care and treatment * * *.

\* \* \* \* \* \*

"Part XX — Section I.

"1. If, while an employee is insured under this Part with respect to a dependent, such employee or dependent incurs expense because of confinement of the dependent in a hospital * * * the Massachusetts Mutual upon receipt of due proof of such expense will pay to such employee for any period of confinement * * *

\* \* \* \* \* \*

"b. a benefit in the amount of the charges other than for room and board made by the hospital for medical care and treatment * * *."

In September 1963, plaintiff Lipa's dependent wife, while in Fairview Hospital, received two pints of blood which had been supplied by the blood bank. In August and October 1963, plaintiff Striebel, while confined in The Swedish Hospital, received four pints of blood also supplied by the blood bank. For this blood each patient was charged the established price of $30 a pint. This expense was paid to the hospitals by the insurance company with the understanding that payment would be refunded if the blood furnished was replaced. The blood was in fact replaced by the Dayton Rogers Donor Club, and the insurance company thereafter received refunds from the hospitals. Plaintiffs instituted this action, contending that the refund should have been made to the individual plaintiffs rather than to the insurance company.

We are accordingly required to construe the provision that the insurer will compensate when the insured "incurs expense because of confinement in a hospital," or "because of confinement of [a] dependent in a hospital," which expense the insurer "will pay to such employee for any period of confinement." The insurer argues that no expense in fact was incurred in connection with the transactions and that they involved nothing more than a bookkeeping procedure. The insurer further contends that "[t]he procedure was not intended to and did not fix liability for blood received by patients who were members of the donor club."

It seems to us that this argument loses its force when it is considered that the entire matter was treated as an ordinary commercial transaction. The insurance company paid the hospital for the blood as it would for any other charge for which it was liable under its policy. It must be conceded that if the employees had not contributed to the pool as donor members or had not otherwise replaced the blood that would have been the end of the transaction. In Balkowitsch v. Minneapolis War Memorial Blood Bank, Inc. 270 Minn. 151, 132 N. W. (2d) 805, we noted that the transfusion of whole blood involves a transaction having the features of both a sale and a service. Blood which is provided gratuitously or for a price is a commodity having value. Since it has an established value, as demonstrated by the transactions in this case, and is part of the expense necessarily incurred by the insured plaintiffs, it cannot be fairly said that it is nothing more than an accounting ritual. The utilization of blood transfusions is a common medical practice, and if the insurer in preparing this type of policy did not wish to honor claims for the established price of whole blood, it could have excluded that item specifically so that the insured would know that that service was not covered by the policy. Feit v. St. Paul Fire & Marine Ins. Co. 209 Cal. App. (2d) Supp. 825, 27 Cal. Rptr. 870; Masaki v. Columbia Cas. Co. 48 Hawaii 136, 395 P. (2d) 927; Kopp v. Home Mutual Ins. Co. 6 Wis. (2d) 53, 94 N. W. (2d) 224; State Farm Mutual Auto. Ins. Co. v. Fuller, 232 Ark. 329, 336 S. W. (2d) 60.

Nor do we feel that the absence of an actual expenditure of money is determinative on the question of whether an expense is incurred. The word "expense" may include, in addition to a payment, the employment

and consumption of time and labor or the expenditure of other resources. In his memorandum the trial court said:

"It seems clear here that the plaintiffs have incurred an expense even though they did not pay this expense in money, but instead gave up something of value in payment of the expense. Here the plaintiffs gave up blood bank credits, which were clearly something of value, in payment for the blood they received. In all of these cases the plaintiff either has to give up blood or blood credits through the donor club.

"The Minnesota courts have consistently held that aggrieved parties are entitled to recover 'expenses' even though various medical services may be performed gratuitously, payment may be made by a collateral source or furnished by giving up something of value, as in the case at bar. See Dahlin v. Kron, 232 Minn. 312, 45 N. W. 2d 833; Wells v. Minneapolis B. & A. Assn.,122 Minn. 327, 142 N. W. 706; Collins v. Farmers Insurance Exchange, 271 Minn. 239, 135 N. W. 2d 503; and Beschnett v. Farmers Equitable Ins. Co. (1966), 146 N. W. 2d 861."

Here, the resource expended is the blood supplied as a replacement through membership in the donor group to which the individual plaintiffs belonged.

In support of its argument that an expense was not incurred, the insurance company cites United States v. St. Paul Mercury Ind. Co. (8 Cir.) 238 F. (2d) 594; Reserve Life Ins. Co. v. Coke, 254 Miss. 936, 183 So. (2d) 490; Nagy v. Lumbermens Mutual Cas. Co. 100 R. I. 734, 219 A. (2d) 396; Drearr v. Connecticut General Life Ins. Co. (La. App.) 119 So. (2d) 149; and Irby v. Government Employees Ins. Co. (La. App.) 175 So. (2d) 9. We consider these cases inappropriate. Unlike the situation here, several relate to hospitalized policyholders who received medical services at Federal hospitals without incurring monetary obligations and who therefore did not "incur expense" within the meaning of their private insurance policies.

Affirmed.