## School Director Expenses

KANE, *Attorney General,* November 5, 1975—You have requested our opinion as to whether members of the boards of school directors are entitled to reimbursement for lost wages in instances where they attend educational conventions. It is our opinion, and you are advised, that school directors are not entitled to reimbursement for lost wages resulting from attendance at educational conventions. Section 516 of the Public School Code of March 10, 1949, P.L. 30, art. V, as amended, 24 P.S. §5-516.1, permits members of boards of school directors to be reimbursed "for all expenses actually and necessarily incurred in going to, attending

and returning from the place of such meeting, including travel, travel insurance, lodging, meals, registration fees and other incidental expenses necessarily incurred, but not exceeding thirty dollars ($30.00) per day for lodging and meals."

In order to reach an opinion on the question you raised, it becomes important to determine the meaning of the terms "all expenses actually and necessarily incurred" and "other incidental expenses necessarily incurred."

I. The Statutory Construction Act of December 6, 1972, P.L. 967 (No. 290), sec. 3, provides that words and phrases shall be construed "according to their common and approved usage.": 1 Pa.C.S. §1903. The dictionary definitions of the terms "expenses" and "incurred" shed some light in this area. The word "expenses" is defined as:

"The act or practice of expending money; the act or practice of using up; something expended to secure a benefit or bring about a result; financial burden or outlay; the charges incurred by an employe in connection with the performance of his duties; an item of business outlay chargeable against revenue for a specific period; a cause or occasion of expenditures; a sacrifice.": Webster's Third New International Dictionary.

The word "incur" is defined as: "To become liable or subject to.": Webster's Third New International Dictionary. These dictionary definitions suggest that, according to common usage, a person has "incurred expenses" when he has "become subject to or liable to a laying out or using up of money or other resources."

II. The courts have given a number of definitions to the term "expenses incurred." In general, these have echoed the dictionary definitions, defining

"expense" to mean an outlay of funds made in connection with an enforceable legal obligation to pay. In the case of Municipal Housing Authority v. Levine, 136 N.Y.Supp. 2d 197, 198 (1954), the Schenectady County Court of New York summarized the general definition of "expense" followed by State and Federal courts and relied on the Webster's Dictionary definition of "expense" as meaning that which is "expendable, laid out or consumed; cost; outlay; charge. . . ." In the case of the United States v. St. Paul Mercury Indem. Co., 133 F. Supp. 726, 732, 733 (1955), the United States District Court of Nebraska stated that "expenses are not incurred . . . unless the legal obligation to pay them has arisen." A person has "incurred expenses" when he "has run into an obligation to pay out money." The court emphasized that, to qualify as an expense in any legal sense, there must have been a "real and substantial, not a fictitious, ostensible or merely philosophical 'running into the obligation to pay.' "

A somewhat broader definition of "expense" has been set forth in two recent decisions. The Court of Civil Appeals of Texas in the case of Travelers Ins. Co. v. Valey, 421 S.W. 2d 478, 481 (1967), stated that the term "expense" means "money spent; cost; charge; money to pay for charges; cost with the idea of loss, damage or sacrifice; drain on one's finances; outlay; burden of expenditures." The Supreme Court of Minnesota in the case of Local 1140, Intern. Union of Elec., Radio and Mach. Workers, AFL-CIO v. Massachusetts Mut. Life Ins. Co., 282 Minn. 455, 165 N.W. 2d 234, 236 (1969), stated that the word "expense" may include, in addition to monetary payment, the employment and consumption of time and labor or the expenditure of other

resources. The Travelers Insurance and Local 1140 cases represent an enlargement of the definition traditionally used by the courts, and may lend some credence to the position that a school directors' lost wages should be included as an expense of the type designated as an "other resource," i.e., of their jobs as sources of income. However, in both cases the definition of "expense" still carries with it the connotation of an enforceable legal obligation to pay the commodity being expended, (whether money, time or other resources.) The school directors do, indeed, suffer a real loss of wages when they leave their regular occupations to attend educational conventions. However, they cannot be said, by the act of going to such a convention, to render themselves subject to a legal obligation to pay out or expend the amount of wages they would have received had they not attended the convention. Those particular wages would only become the property of the school directors had they worked instead of attending the convention, and performed the services for which the wages were to be paid. In no real sense can the school directors be said to have "laid out," "spent" or committed themselves to pay wages which, by virtue of their attendance at an educational convention, they never earned and thus never possessed. Thus, lost wages would not fall within the definition of an "expense incurred" so that no legislative intent may be inferred that school directors should be reimbursed for wages lost as a result of attendance at educational conventions. The Statutory Construction Act of 1972, supra, provides that: "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.": 1 Pa.C.S. §1921(b).

III. Even if we were to assume arguendo that the meaning of expenses is ambiguous, we would still not be able to construe section 516 as authorizing school directors to be reimbursed for wages lost as a result of attendance at educational conventions. In the construction of laws, where general words are followed by words of a particular and specific meaning, the courts have held that "such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned.": Abeles v. Adams Engineering Co., Inc., 64 N.J. Super, 167, 165 A. 2d 555, 560 (1960). See also 1 Pa.C.S. §1903(b). In section 516.1, the general words "expenses actually and necessarily incurred" are followed by the following words of particular and specific meaning:

"Travel, travel insurance, lodging, meals, registration fees and other incidental expenses necessarily incurred."

The term "lost wages" is not of the same general kind or class as the terms "travel, travel insurance, lodging, meals, registration fees and other incidental expenses." Therefore, the loss of wages could not be. construed as an "expense incurred" within the meaning of section 516 of the act.

IV. Section 321 of the Public School Code of March 10, 1949, P.L. 30, art. III, as amended, 24 P.S. §3-321, specifically states that all persons elected or appointed as school directors shall serve without pay. Read in conjunction with section 516, it may be inferred from section 321 that the Legislature did not envision school directors receiving compensation from the State, either directly as a salary or indirectly in the form of compensation for

wages lost, in return for the performance of their duties as school directors.

These conclusions are reinforced by the fact that, where the Legislature has wished to compensate public officials for wages lost in the performance of their duties, it has done so explicitly by statute. The legislature specifically provided, in a statute more recent than section 516, that members of the Professional Standards and Practices Commission shall be reimbursed for expenses and for lost wages while attending commission meetings. That statute provides as follows:

"Members of the Commission shall receive no compensation for their services, but shall be reimbursed for their actual and necessary expenses incurred in the performance of official Commission business. A member of the Commission who is an employe of an agency of the Commonwealth, or any of its political subdivisions including school districts, shall be permitted to attend Commission meetings and perform other Commission duties without any loss of income or other benefits. A member of the Commission who is employed by a private employer shall be reimbursed for any income lost as a result of attendance at Commission meetings or performance of other official Commission duties.": 24 P.S. §12-1257.

The contrast between the above language and that of section 516 of the Public School Code makes it clear that if the legislature had determined that school directors should be reimbursed for lost wages, the latter statute would have specifically provided for such reimbursement.

V. There remains, however, a question as to whether the spirit, if not the letter of section 516 may be interpreted as including lost wages among

the "expenses incurred" for which school directors are to be reimbursed. In Cheatem v. Fallowfield Township, 6 D. & C. 2d 350, 354 (1955), the court, by way of dicta, noted that "a loss of wages might properly be included as coming within the spirit of the Act authorizing the repayment of the expense incident to the attendance of the school directors at such meetings." The language in Cheatem was cited by the Washington County court in In Re Burgettstown Area School District Audit Report, 45 Wash. Co. Reports 185, 189 (No. 155 Feb. Term 1964). In Burgettstown, the court expressed the opinion that the spirit of section 516 encompassed reimbursement to school directors for wages lost in the performance of their duties. The reason the statute provided for the allowance of trip expenses, explained the court, "is so that the directors, unsalaried as they are, will not have to dip into their own pocketbooks to actually carry on the business of the school district. It matters not at all to the directors how their financial loss comes about— but only that they were forced to lose money while attending to necessary school work."

It is important to stress, however, that the Burgettstown decision held only that reimbursement to the school directors of lost wages was permissible under the spirit of the statute, not that the statute clearly mandated such reimbursement. Moreover, the Burgettstown opinion was apparently based on the erroneous belief that the dicta in Cheatem, quoted above, represented a controlling principle. It is true, as the Burgettstown court states, that the spirit of section 516 seems directed toward ensuring that school directors will suffer no financial loss as a consequence of performing their duties. However, this understanding of the spirit of the statute does not justify overlooking the clear

evidence of the legislature's intention to exclude lost wages from among the expenses to be reimbursed: evidence provided by the list of typical expenditures, by the language of section 321 that school directors shall serve without compensation, and by the fact that the legislature has provided for compensation for lost wages for members of the Professional Standards and Practices Commission explicitly in another statute. The Statutory Construction Act provides that "when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.": 1 Pa.C.S. §1921(b).

In In Re Appeal from Controller's Report of Olyphant School District, 61 Lack. Jur. 197 (1960), the sum of $50 was paid to each of four school directors for alleged expenses for a meeting with representatives of the Department of Education in Harrisburg. Judge (now President Judge) Robinson said, beginning at page 204:

". . . The purpose of the trip was to secure funds with which to pay accrued teachers' salaries. *The directors seek to justify the payments on the ground that they are entitled to reimbursement for wages lost at their regular employment* and that there existed a custom to pay each director $100 for convention purposes. Of course, these contentions possess no merit.

*"The law looks with a jaundiced eye whenever school district funds are traceable to the school directors' pockets.* When a director seeks lawful reimbursement of moneys expended for district purposes he must strictly comply with the letter of the School Code. Under the Code, as amended, June 28, 1957, P.L. 408, section 1, 24 P.S. §5-517, expenses are properly allowed to directors for attending meetings and conventions *providing that*

*such expenses have been actually and necessarily incurred and presented to the district in a written itemized statement. . . ."* (Emphasis supplied.)

We believe that the Olyphant case correctly stated the intention of section 516 and that the Cheatem and Burgettstown cases, supra, did not. *

In conclusion, it is our opinion that section 516 of the School Code does not permit reimbursement to school directors for wages lost due to their attendance at educational conventions.

Pursuant to section 512 of The Administrative Code of April 9, 1929, P.L. 177, art V, 71 P.S. §192, we have sought the comments of the Treasurer and Auditor General and are advised that they concur in our conclusion.

---

*In Appeal from Audit of East Allegheny School District, C. P. Allegheny County, April term no. 85 (1972) (page 2, slip opinion), the Court of Common Pleas of Allegheny County stated that: "Wages lost by school directors when absence from their occupation is required to fulfill duties of school directors are not specifically covered by the School Code." However, the court found that in the extraordinary circumstance where school directors are ordered by the court to attend conferences regarding a teachers' strike, they could be reimbursed for wages lost.