314 N.W.2d 828 (1982)
Bruce HUEPER, a minor child, by Sharon Hueper, his mother and Guardian, Respondents,
v.
Dean GOODRICH and John M. Neubauer, defendants and third party plaintiffs, Appellants,
Arland Gregor and Emil Hueper, third party Defendants, Respondents.
Emil W. HUEPER and Sharon Hueper, Respondents,
v.
Dean GOODRICH and John M. Neubauer, defendants and third party plaintiffs, Appellants,
v.
The FORD MOTOR COMPANY, third party defendant, Respondent.
Bruce HUEPER, Respondent,
v.
The FORD MOTOR COMPANY, Respondent,
Emil W. HUEPER and Sharon Hueper, Respondents,
v.
FORD MOTOR COMPANY, Respondent.
No. 81-21.
Supreme Court of Minnesota.
January 22, 1982.
*829 McLean, Peterson, Sullivan, Haugh & Riedy, Mankato, for appellants.
Erickson, Zierke, Kuderer, Myster & Madsen, Fairmont, for Bruce Hueper by Sharon Hueper.
Farrish, Johnson, Maschka & Hottinger, Dailey & Kunard, Mankato, Brecht, Hedeen & Hughes, Worthington, for Gregor.
Blethen, Gage, Krause, Blethen, Corcoran, Berkland & Peterson, Mankato, for Emil W. Hueper et al.
Jardine, Logan & O'Brien, St. Paul, for The Ford Motor Co.
Wm. J. Nierengarten, Austin, for defendants, Goodrich and Neubauer.
Considered and decided by the court en banc without oral argument.
TODD, Justice.
Bruce Hueper, a minor, was seriously injured in an auto accident. A lawsuit was commenced on his behalf for his injuries and his father brought action for his medical expenses. The trial was bifurcated as to liability and damages. Following the damages trial, the court allowed the father full recovery of the reasonable value of medical expenses, including hospital services furnished without charge, under the collateral source rule. The trial court also allowed interest on the amount of the defendants' insurance policy from the date of the liability trial. We affirm as to the father's claim for medical expenses and reverse as to the allowance of interest.
The facts relevant to this appeal were stipulated to by the parties. On August 15, 1974 a truck owned by Arland Gregor and operated by Emil Hueper collided with a truck owned by appellant Goodrich and operated by appellant Neubauer, resulting in severe injuries to Bruce Hueper, a minor, who was a passenger in the Gregor truck. Sharon Hueper, Bruce's mother and natural guardian, commenced a personal injury action on his behalf against appellants Goodrich and Neubauer who in turn impleaded Arland Gregor and Emil Hueper. Emil and Sharon Hueper commenced a separate action against Goodrich and Neubauer. The Ford Motor Company was impleaded by Goodrich and Neubauer and was subsequently sued directly by Bruce Hueper and Emil and Sharon Hueper. The question of the liability of all parties except Ford Motor Company was tried in Faribault County District Court before District Court Judge Milton Mason and a jury on February 17, 18, 19 and 20, 1976. The jury returned a verdict finding that defendants Neubauer and Goodrich were 85% liable for Bruce Hueper's injuries and that Emil Hueper and Arland Gregor were 15% liable for those injuries. A trial on the issue of damages was held on the 22nd through the 25th of July, 1980 in Faribault County before District Court Judge Harvey Holtan and a jury. The jury awarded Bruce Hueper judgment against the defendants in the amount of $600,215 and Emil Hueper judgment against the defendants in the amount of $37,270.
During the trial of the damage issues, State Automobile and Casualty Underwriters settled the claims of Emil and Sharon Hueper against Goodrich and Neubauer for $85,000. The settlement did not include damages sustained by Emil Hueper with respect to Bruce Hueper while Bruce was a minor.
*830 The jury award of $37,270 to Emil Hueper was for special damages arising out of medical and hospital care provided to his son Bruce before Bruce's 18th birthday. Of that sum, $25,977 reflected the reasonable value of the medical care provided to Bruce Hueper while he was a patient at Shriner's Hospital. A physician at Shriner's Hospital testified that it was the policy of the hospital not to charge patients for care provided or to accept insurance proceeds from a third party.
In a post-trial motion, Goodrich and Neubauer requested the trial court to reduce Emil Hueper's recovery by the amount of the value of services provided by Shriner's Hospital and to rule that no interest should be paid on Bruce Hueper's verdict prior to the date of the jury's award of damages (July 25, 1980). In an order dated October 30, 1980 the trial court denied both post-trial motions. The court found that the collateral source rule allowed Emil Hueper to recover the reasonable value of the medical care given to his minor son, although that care had been provided free of charge by a charitable hospital. It also found that because liability had been determined and the amount of damages was certain to at least reach, if not exceed the amount of the $100,000 policy held by the defendants, Bruce Hueper could receive interest on the $100,000 from the date that liability was determined (January 20, 1976) to the date that a verdict was reached on damages (July 25, 1980). The court noted that the policy amount could have been paid into court under Rule 67 of the Rules of Civil Procedure but was not. It is from this order that the parties appealed.
The issues presented are:
I. Did the trial court err in applying the collateral source rule to allow the father of a minor son to recover the reasonable value of medical and hospital services provided free of charge by a charitable institution?
II. Did the trial court err in awarding interest on the amount of insurance coverage from the date of the determination of liability to the date of the determination of damages?
1. Under the collateral source rule, a plaintiff may recover damages from a tortfeasor, although the plaintiff has received money or services in reparation of the injury from a source other than the tortfeasor. Maxwell, The Collateral Source Rule in the American Law of Damages, 46 Minn.L.Rev. 669, 670-71 (1962). The benefit conferred on the injured person from the collateral source is not credited against the tortfeasor's liability, although it may partially or completely reimburse the plaintiff for his injuries. Restatement (Second) of Torts, § 920A (1979). The rule has been applied where the plaintiff has received insurance proceeds, employment benefits, gifts of money or medical services, welfare benefits or tax advantages. Note, Unreason in the Law of Damages: The Collateral Source Rule, 77 Harvard L.Rev. 741, 742-48 (1964).
Various justifications have been given for applying the rule. Where the plaintiff has paid for the benefit such as by buying an insurance policy, the rationale is that the plaintiff should be reimbursed and the tortfeasor should not get a windfall. See Restatement (Second) of Torts, § 920A, comment b (1979). If the benefit is a gift from a third party, such as an employer, a relative or a charity, the argument is that the donor intended that the injured party receive the gift and not that the benefit be shifted to the tortfeasor. See Note, supra at 751. Other reasons for applying the rule are that the wrongdoer should be punished by being made to take full responsibility for his negligence and that the plaintiff will be more fully compensated if he is allowed to recover from the tortfeasor. See id. at 748-50.
Minnesota has adopted the collateral source rule and the cases applying the rule have relied upon the policy reasons discussed above. See Hubbard Broadcasting, Inc. v. Loescher, 291 N.W.2d 216 (1980) (purpose of rule is punitive); Van Tassel v. Horace Mann Ins. Co., 296 Minn. 181, 207 N.W.2d 348 (1973) (insurance paid for by plaintiff should not benefit tortfeasor); *831 Local 1140, Int'l Union of Elec., Radio & Mach. Workers, 282 Minn. 455, 165 N.W.2d 234 (1969) (benefit of reimbursement by hospital when blood was replaced by donor group to which injured plaintiffs belonged goes to plaintiffs.
In this case the trial court correctly followed Minnesota case law in applying the collateral source rule. Emil Hueper, as the father of Bruce Hueper, a minor, had a right to recover special damages for medical expenses from the defendants. Faber v. Roelofs, 298 Minn. 16, 212 N.W.2d 856 (1973); Dettinger v. Uleberg, 171 Minn. 81, 213 N.W. 377 (1927). He could still recover the reasonable value of those medical expenses although Shriner's Hospital did not charge the Huepers anything for Bruce's medical care. In Dahlin v. Kron, 232 Minn. 312, 45 N.W.2d 833 (1950), this court held that the plaintiff could recover the reasonable value of medical services provided by a hospital even though those services were rendered gratuitously by the hospital.
We are being asked to review the policy considerations involved in our long-standing support of the collateral source rule. The facts of this case present this issue in a light most favorable to those advocating abandonment of the collateral source rule. However, the rule in its application is broader than the facts of this case. To begin limiting the application of the rule is to invite an unlimited flow of litigation seeking ad hoc determinations with the confusion that would necessarily follow. Considering the rule in its broadest sense and reviewing all of the considerations involved in such an evaluation, we decline to abandon the collateral source rule or to create limitations on its application.
2. The trial court's allowance of interest on the amount of the defendants' insurance policy from the date of the determination of liability is contrary to the principles we have enunciated.
In determining whether a plaintiff is entitled to interest on the verdict, we have distinguished between liquidated and unliquidated claims, allowing interest in the case of unliquidated claims only where the damages were readily ascertainable by computation or reference to generally recognized standards such as market value and not where the amount of damages depended upon contingencies or upon jury discretion (as in actions for personal injury or injury to reputation).
Potter v. Hartzell Propeller, Inc., 291 Minn. 513, 518, 189 N.W.2d 499, 504 (1971). Here the damages, no matter how large they may be, are unliquidated. The fact that the plaintiff's injuries were such that his recovery was likely to exceed the amount of insurance coverage does not make the damages "readily ascertainable" for purposes of awarding prejudgment interest. To consider information such as insurance coverage would emasculate the rule. Interest shall be allowed only from and after July 25, 1980, the date the jury returned its verdict and the damages became liquidated.
Affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
SIMONETT, Justice (dissenting in part).
The social and economic setting has changed substantially since the collateral source rule first appeared in the middle of the last century. Its continued extensive use today has been criticized by most neutral commentators. See, e.g., Sedler, The Collateral Source Rule and Personal Injury Damages: The Irrelevant Principle and the Functional Approach, 58 Kentucky L. J. 36 (1969); Note, Unreason in the Law of Damages: The Collateral Source Rule, 77 Harvard L.Rev. 741 (1964); Fleming, The Collateral Source Rule and Loss Allocation in Tort Law, 54 Calif.L.Rev. 1478 (1966). Dean Richard C. Maxwell, in his article, The Collateral Source Rule in the American Law of Damages, 46 Minn.L.Rev. 669, 695 (1962), concludes, with some reservations, that the rule at best "operates as an instrument of what most of us would be willing to call justice."
Our court has consistently applied the collateral source rule in a variety of situations; in my view, however, there is no *832 good reason to extend the collateral source rule to this case. To the extent Dahlin v. Kron, 232 Minn. 312, 45 N.W.2d 833 (1950), suggests otherwise, it should not be followed.
Mr. Hueper has been compensated for his own personal injuries. He settled for $85,000. Before us is his claim for hospital and medical expenses incurred by him for his son Bruce's care during Bruce's minority. This claim is separate from, although derivative of, Bruce's claim. The jury awarded Mr. Hueper $43,847.34. This was reduced by 15% for Mr. Hueper's own fault to $37,370.24. This figure includes $24,977.14, representing the reasonable value of the services rendered by Shriners Hospital. Mr. Hueper keeps this money, since the hospital made no charge and accepts no payment for its services. The $24,977.14 is to be paid by defendants Dean Goodrich and John M. Neubauer, the owner and driver, respectively, of the other truck involved in the accident. Mr. Goodrich is not personally at fault. He is liable to Mr. Hueper for the unincurred hospital bill of $24,977.14 by reason of his vicarious liability as owner of the truck.
The collateral source rule is usually justified on one or more of the following rationales: (1) the injured party has paid for the collateral source benefit and deserves what he paid for; (2) a collateral source benefit is sometimes a gift intended by the donor to benefit the injured donee and not the tortfeasor; (3) only cumulation of collateral source benefits with amounts assessed the tortfeasor will fully compensate the injured person; (4) a tortfeasor deserves to be punished, a purpose which would be foiled if he were relieved from "total responsibility" for his wrong; and (5) since a windfall payment is inevitable, better it go to the injured person than the tortfeasor.
None of these reasons, it seems to me, applies in this case, or, to the extent any does, it applies with very little persuasive force.[1]
First, Mr. Hueper did not pay for the Shriner's care in any way. He paid no insurance premium; there was no surrender of sick leave or other fringe benefits. No "consideration" was given. Thus the case is unlike Van Tassel v. Horace Mann Ins. Co., 296 Minn. 181, 207 N.W.2d 348 (1973).
Second, in providing its care, the Shriners Hospital was indifferent as to whether Bruce Hueper had been in a compensable auto accident or not. He was afforded no different care than other patients. No specific gift was intended, such as where fellow employees donate blood to one of their number, as in Local 1140 v. Massachusetts Mutual Life Insurance Co., 282 Minn. 455, 165 N.W.2d 234 (1969), or where one spouse renders nursing care to the other.
Third, it cannot be said deduction of the Shriners Hospital bill will leave Mr. Hueper less than fully compensated. It is said that pain and suffering are more likely to be completely compensated if collateral source benefits are recoverable. Here, however, plaintiff's entire claim is for specific expense items; no general damages, difficult to measure, are involved. The claim is more akin to a property damage claim where often the collateral source rule is disallowed.
Fourth, there would seem to be little reason to punish the defendants. If the defendants deserve punishment, punitive damages should be the route. If the jurors had known the hospital bill was not actually incurred, it is doubtful they would have *833 punished defendants by making them pay it nevertheless. In any event, there seems to be little need to punish defendant Goodrich, who was not personally at fault.
Fifth, the windfall rationale lacks persuasive force here. Ordinarily, other things being equal, if someone is to benefit by the generosity of the Shriners Hospital, it is better that it be the injured party rather than the wrongdoer. What this means is that it is better to assure that plaintiff is made whole than that the defendant pay less than he ought to. Here, however, "other things" are not equal. Since plaintiff's damages relate solely to "out-of-pocket" expenses, it cannot be said plaintiff is not made whole even with the collateral source benefit deducted. To say defendant should not pay less than he ought to is only another way of saying the defendant should be punished, a rationale which, as we have seen, is inappropriate in this factual setting.
While the collateral source rule has been strongly criticized, it is still true no one has really offered a better alternative. Perhaps this is the strongest rationale for its continued use. In most cases there is simply no way of knowing what is the fairest way to handle the collateral source benefit "windfall." To try and find this "equality" by admitting a multitude of collateral sources would be most confusing, prejudicial and unfair.[2] It is probably better, arbitrarily, to keep collateral source benefits out of the lawsuit and then allow the windfall to plaintiff.
But having said this, I see no need to extend this somewhat arbitrary rule to a fact situation where the policy considerations favoring it clearly do not apply. I would be willing to hold that in a parent's derivative claim for out-of-pocket expenses the parent may not recover for hospital or medical care furnished his or her minor child gratuitously and not as a specific gift. At the very least, I would hold, in this case, that plaintiff is not entitled to recover against defendant Goodrich who is not personally at fault. It should be plaintiff's option whether to prove up the reasonable value of the gratuitous services and then have the court, after the verdict, make the reduction, or to choose not to include the services in his claim.
PETERSON, Justice (dissenting).
I join in the dissent of Justice Simonett.
OTIS, Justice (dissenting).
I join in the dissent of Justice Simonett.
KELLEY, Justice, not having been a member of this court at the time of the submission, took no part in the consideration or decision of this case.
NOTES
[1] A collateral source is a benefit conferred by a third party. If plaintiff by his own efforts reduces or mitigates his damages, he cannot recover the reduction from the defendant. If plaintiff chooses to take a bed in a double room at the hospital rather than a private room, he cannot recover the difference from the defendant.

Appellants here argue that the collateral source rule applies to "injured persons" and that Mr. Hueper is not injured, not in the sense he sustained a personal injury. The argument is too technical. Mr. Hueper is "injured" in the tort sense of having incurred expenses for his son's care, and this is sufficient. It might be argued Mr. Hueper has not "incurred" the hospital expense and so is not "injured," but this is only another way of questioning the rationale behind the collateral source rule.
[2] If one starts recognizing collateral sources, where does one stop? Studies indicate that about 55% of auto accident tort victims' compensation comes from tort recoveries, the remainder being supplied by collateral sources. Birmingham, The Theory of Economic Policy and the Law of Torts, 55 Minn.L.Rev. 1, 9 (1970); United States Department of Transportation, Automobile Insurance and Compensation Study, March 1971, "Motor Vehicle Crash Losses and their Compensation in the United States." What about health insurance benefits, pensions, social security, sick leave, disability insurance and, in the case of a decedent, life insurance? And if these items are recognizable, then what about defendant's liability insurance or lack of it? Here, for example, the Goodrich truck had only $100,000 coverage for any one claim and the insurer paid the $100,000 to Bruce, so apparently the defendants have personal exposure for Mr. Hueper's verdict of $37,370.24.

"The statement of the problem as a conflict between overcompensation and windfall misses the mark if it assumes that absent this problem, there would be accurately-measured compensation. The most that can be done is to talk in terms of probability and risk. Do we increase the risk of overcompensation (or reduce the extent of undercompensation) by excluding consideration of benefits from a collateral source, or do we increase the risk of undercompensation (or reduce the extent of overcompensation) by allowing such benefits to be considered?" Sedler, The Collateral Source Rule and Personal Injury Damages: The Irrelevant Principle and the Functional Approach, 58 Kentucky L.J. 36, 59 (1969). The collateral source rule says, in effect, that since there is no ready answer to this question it is better not to ask the question.