**MARYLAND CASUALTY COMPANY,**
Appellant,

v.

Ray THOMAS et al., Appellees.

No. 6589.

Court of Civil Appeals of Texas.

Amarillo.

April 2, 1956.

Rehearing Denied April 30, 1956.

Simpson, Clayton & Fullingim, Amarillo (Richard E. Stokes, Jr., Amarillo, of counsel), for appellant.

Boyer & Lemon, Perryton, for appellees.

PITTS, Chief Justice.

This is an appeal from a judgment awarding a balance due of $834.90 for services and medical expenses sought under the terms of a public liability automobile insurance policy as a result of injuries received because of an automobile accident. Appellee, Ray Thomas, the insured, on behalf of himself and his minor son, Kim Thomas, filed suit against appellant, Maryland Casualty Company, the insurer, for a balance due under the terms of said policy as a result of injuries received by Kim Thomas on July 25, 1953, when an accident occurred while he was riding in his father's automobile at a time when there was coverage under the terms of the said policy. As a result of the injuries of Kim Thomas, nine years of age, he spent some three weeks in a hospital where he received medical treatment, for which appellant paid $165.10 under the terms of the policy. Kim also received serious injuries to his mouth and teeth as a result of the accident, for which appellee claimed appellant was liable but appellant disclaimed further liability because of alleged policy limitations, which controversy resulted in the filing of this action.

The case was tried to the court without a jury as a result of which judgment was rendered for appellee as previously stated, from which judgment an appeal has been perfected. Appellant admits the boy's injuries and the policy coverage except for the alleged policy limitations relied upon as a defense.

The case involves the question of a proper construction to be given the medical payment clause of the policy in question wherein appellant obligates itself "to pay all reasonable expenses incurred within one year from the date of the accident for necessary medical, surgical, ambulance, hospital, professional nursing and funeral expenses, to or for each person who sustains bodily injury, sickness or disease caused by accident while in or upon, entering or alighting from the automobile." The terms of the policy likewise limit recovery to $1,000 for each person injured in the accident, for which reason the judgment for recovery was limited to $864.90, after appellant had already paid $165.10 for hospital and medical care as a result of Kim Thomas' other injuries sustained.

The record conclusively reveals that the term of the policy was for one year, from date September 22, 1952, to September 22, 1953; that the boy was injured as a result of the accident which occurred on July 25, 1953; that appellee took his son Kim to a dentist who found he had lost two front teeth and others were injured as a result of the accident, but because of the boy's age it would take considerable time to securely repair the damages done to the growing boy's mouth and teeth; and that the dentist, after making X-rays and conducting a careful examination over a period of time, furnished a full estimate of $1,050 as the reasonable cost for completing the work successfully, that appellee had already paid the said sum to the dentist but that such work could not be successfully and securely completed within one year from the date of the accident which resulted in the injuries.

Only two witnesses gave oral testimony, namely appellee, Ray Thomas, and the dentist, Dr. M. G. Wood. Dr. Wood testified that Kim Thomas had been his patient prior to his injuries in question; that he examined Kim's mouth injuries and his teeth soon after the injuries were sustained and found two front teeth gone and others needing attention but to repair such securely would take some time; that he thereafter examined Kim's mouth and teeth

several times and on December 11 and 12, 1953, he made X-rays of the conditions found and thereafter prepared an estimate of the cost of Kim's necessary repairs and gave copies of the same to appellee, Ray Thomas, and to appellant's agents. After giving such testimony, Dr. Wood gave the following testimony in response to questions propounded:

"Q. All right, sir. Why didn't you treat Kem Thomas as of that date?" (December 11 and 12, 1953). A. The age of the patient determines what we can do. In other words, at his age, he is so—his growth pattern has not been established. The problem is what we could do at that particular time that would help him. After considering it quite completely we determined to— or we came to the conclusion to keep the case under observation for awhile. And if I may go into this in a little detail, sir?

"Court: Yes, sir.

"A. Kem Thomas was approximately about nine years old when this happened. And at nine years we have the upper right central and lateral incisor permanent teeth. We have the upper right cuspid, is a baby tooth. Therefore, there is no way to restore that at that particular time by bridge work. In other words, the deciduous cuspid would not carry the end of the load. So, then on further examination at a little later date we found that the permanent eye tooth had begun to shift forward toward the median line and, of course, that kept us from doing anything at that time. Of course, at that age there is no way possible to determine the complete extent of his injury.

"Q. Doctor, can you tell—could you tell with any degree of accuracy the type of treatment Kem Thomas' mouth would require insofar as braces and appliances are concerned at that time? A. We did quite a thorough study on that and came to the conclusion that he would have to have orthodontic appliances, space maintainers, and certainly a temporary bridge. Then later on down the line a permanent bridge. Now, when that is to be done, you see. We did not decide definitely, because it is altogether according to his growth pattern. At his age his growth pattern will determine when we are to do these subsequent treatments."

The Doctor further testified that he had already performed a part of such professional services.

Appellee, Ray Thomas, testified about Kim's injuries, his stay in the hospital, the numerous times he was thereafter examined and treated in part by Dr. Wood; that Dr. Wood prepared and gave him an estimate of date May 1, 1954, covering the cost in full for the repairs of Kim's injuries; that he thought Dr. Wood's estimate was a little high until he had Kim examined by several other doctors who likewise gave him estimates of the cost of such repairs, after which he accepted Dr. Wood's estimate and paid him in full therefor on July 22, 1954. Thereafter, Ray Thomas gave the following testimony under cross-examination:

"Q. Well, as I understand it you went around and got all these estimates from these doctors, but this is the one that Doctor Wood gave you? A. Yes. I have the other estimates from the others.

"Q. Yes. I am not interested in them."

Appellant contends that it is not further liable because the dental expenses have not been "incurred" within one year from the date of the accident because repairs can not be performed within one year from the date of the accident, while appellee contends that the language of the policy makes no requirement as to when the services for repairs must or may be performed but such language requires only that the expenses be "incurred within one year from the date of accident," and that the necessary expenses for the repairs in question were "incurred"

within the time limit since they were "caused by the accident." Under the record and according to the contentions made by the parties, the determination of this appeal depends upon the meaning of the word "incurred" as used by the language found in the policy.

Webster's New International Dictionary says, "Incur" means to "render liable or subject to; to become liable or subject to; to bring down upon oneself as to incur debt, danger, displeasure, penalty, etc." The New Century Dictionary says that the word "incur" means to "become liable or subject to through one's own action; bring upon oneself: as to incur liabilities or penalties."

 In our opinion, the word in question should be given its plain and ordinary meaning when used in an insurance contract, just as the word "insurability" or any other commonly used word must be so used. 24 Tex.Jur. 939–940, Sec. 188.

"The word 'incur' in statute permitting deduction of expenses incurred during taxable year must be given ordinary and usual meaning." 20 Words & Phrases, 626.

" 'The word "incur" means brought on.' " 20 Words & Phrases, 624.

" 'Incurred' means to become liable for, or subject to, to render liable or subject to; 'incur' means something beyond contract, something not embraced in the word 'debt.' * * * In actions for injuries, recovery may be had for amounts shown to have been expended or incurred for hospital bills and medical treatment, provided such damages are properly pleaded; 'incurred' meaning to become liable for. * * * 'Incurred' means to become liable for, so that, as used in a guaranty that 'we hold ourselves responsible for any costs and damages which may be incurred by said D.,' it means such costs and damages as he shall become liable for, and not necessarily that such liability has been paid." 20 Words & Phrases, 623.

The last part of the above quotation shown appellant cites as authority in support of its contentions here made. In our opinion, it does not support appellant's contentions here made but supports the contrary position taken by appellee. It will be noted that the authority there cited and relied upon by appellant defines the word "incurred," then illustrates its meaning and finally says: "It means such costs and damages as he shall become liable for, and not necessarily that such liability has been paid." Appellant also says "incurred," when applicable to medical expenses paid out or incurred, means to become liable for. Appellant contends in effect that the use of the phrase "expenses incurred" as used in its policy means expenses for services that have already been "rendered or performed within one year from the date the accident occurred." Such a contention is not supported by appellant's authorities cited. Under all of the authorities cited, we think appellant became liable to appellee for "all reasonable expenses * * * caused by the accident" on the day it occurred. A debt has been incurred when liability attaches; a contingency promise to pay has been incurred when the contingency upon which the payment depends occurs. It was then known that appellant would be liable for Kim's injuries only to the extent of a total of $1000 and no more. However, in our opinion, appellant was liable for all reasonable expenses not to exceed $1000 for the repairs of Kim's injuries caused by the accident whether the services correcting them have or have not been performed within one year from the date of the accident.

 Appellee, Ray Thomas, testified in effect concerning other estimates he procured from other doctors showing the necessary cost for Kim's repairs of his injuries. After receiving the other estimates, he was then convinced that Dr. Wood's estimate was reasonable and he paid it in full. Under cross-examination, he told appellant's counsel that he had such other estimates but appellant's counsel said:

"I am not interested in them."

We therefore believe the trial court was justified in finding and concluding in support of its judgment that the estimate made by Dr. Wood for the necessary expenses, accepted and paid by appellee, Ray Thomas, after he investigated the matter, was a reasonable amount for repairs of the injuries sustained. In the absence of findings filed we must assume that the trial court made all necessary findings in support of its judgment. Old Nat. Life Ins. Co. v. Guest, Tex.Civ.App., 163 S.W.2d 241, and other authorities there cited.

For the reasons stated, appellant's points of error are all overruled and the judgment of the trial court is affirmed.