**C. C. STANUSH, Appellant,**

v.

**AETNA LIFE INSURANCE COMPANY, Appellee.**

**No. 15527.**

Court of Civil Appeals of Texas, San Antonio.

June 2, 1976.

Rehearing Denied June 30, 1976.

Joe Meador, San Antonio, for appellee.

**BARROW, Chief Justice.**

Appellant has perfected his appeal from a take-nothing judgment rendered after a jury trial in his suit upon a group health policy for the reasonable cost of an artificial limb following amputation of his right leg. The jury verdict was favorable to appellant,[1] but judgment was granted upon appellee's motion for judgment non obstante veredicto.

On January 19, 1972, appellant was employed as a mechanic for Tom Benson Chevrolet Company which had a group health policy issued by appellee. This policy covered Benson's employees for the reasonable charges which an employee was required to pay for the necessary treatment of a non-occupational disease and specifically included the charge for an artificial limb. The dispute in this case arose because appellee's policy with Benson was terminated on July 18, 1972. Although appellant's leg was amputated on January 19, 1972, it was not until March of 1973 that appellant's doctor gave him the go-ahead for the artificial limb. The policy extended benefits for a period of up to twelve months after termination provided the employee was "totally disabled" as defined therein.[2] Since appellant had returned to work for Benson in March of 1972, although only in a clerical position at reduced wages, appellee urged and the trial court concluded that he was not totally disabled as a matter of law.

Dibrell, Dotson & Dibrell, Edward Woolery-Price, San Antonio, for appellant.

1. The jury found substantially as follows:

1. We DO find that Plaintiff was totally disabled as a result of the amputation of his leg on January 19, 1972.

In connection with the above question you are instructed that disability shall be deemed to be total, when during all such time his condition is such that common prudence, and the exercise of ordinary care, would require him to refrain from working under the same or similar circumstances that he was engaged in immediately before the amputation in question.

2. We Do find that Plaintiff was totally disabled at the time the Defendant's group insurance coverage was terminated.

3. We DO find that Plaintiff notified Defendant of a claim for a limb within twelve months of the termination of the coverage.

4. We DO find that Plaintiff was totally disabled at the time he notified Defendant of a claim for a limb.

5. We DO find that the need for an artificial limb was a necessary part of the treatment arising from the removal of Plaintiff's leg.

6. A reasonable attorney's fee for preparation and trial of this case on behalf of the Plaintiff is $1,600.00.

2. The words "total disability" as applied to an employee mean that the employee is prevented, solely because of the non-occupational disease, "from engaging in his regular or customary occupation and is performing no work of any kind for compensation or profit."

Appellant urges by his seventeen points of error that the trial court erred in entering the take-nothing judgment and in not granting his motion for judgment upon either of two theories of recovery. He urges first that appellee became obligated to pay for the artificial limb at the time of the amputation of the leg. Secondly, he urges that there is evidence to support the jury findings that he was totally disabled from the time of the amputation of his leg until he made claim for the artificial limb, and therefore, he is entitled to recover under the terms of the policy. Appellee urges, in the alternative, by cross-points, that the trial court erred in not submitting his definition of "total disability" and in overruling his objections to the definition as submitted.

Dr. Anatolio B. Cruz, Jr. performed a hemipelvectomy on appellant because of a malignant tumor in appellant's right groin. Dr. Cruz testified that it was necessary that appellant be fitted with an artificial leg as a part of the treatment; however, a wait of about one year for post-operative treatment and observation was medically required to see that the malignancy did not recur in the stump. This evidence fully supports the jury finding that the need for an artificial limb was a necessary part of the treatment arising from removal of appellant's leg. It was stipulated that the reasonable and necessary cost of the artificial limb is $1,350.00.

A somewhat similar situation was considered in *Maryland Casualty Company v. Thomas*, 289 S.W.2d 652 (Tex.Civ.App.— Amarillo 1956, writ ref'd n. r. e.). An insured boy injured his mouth in an accident. The evidence established that because of the boy's age it would take more than the year provided by the term of the policy to securely repair the damages done to the growing boy's mouth and teeth. It was held that the insurer became liable for all reasonable expenses caused by the accident on the day it occurred, and thus it was liable irrespective of whether the medical services were performed within one year from the date of the accident. See also, *American Bankers Insurance Co. v. Mc-*

*Donald*, 369 S.W.2d 688 (Tex.Civ.App.— Austin 1963, writ dism'd); *Drinkard v. Group Hospital Service, Inc.*, 366 S.W.2d 637 (Tex.Civ.App.—Dallas 1963, writ ref'd n. r. e.).

We believe this holding is applicable to our situation. Appellant's need for the artificial limb arose on January 19, 1972, when his leg was removed. This medical expense became necessary at that time and appellee was obligated to pay for the artificial limb under the terms of its group health policy. This obligation was not changed by the termination of the policy by Benson. The trial court erred in not granting appellant judgment for the stipulated cost of $1,350.00 for the artificial limb plus penalty interest, and attorney's fees. It is unnecessary to consider the points of appellant and appellee relating to the question of whether appellant was totally disabled within the meaning of the policy.

The judgment of the trial court is reversed and here rendered that C. C. Stanush recover judgment against Aetna Life Insurance Company for the sum of $1,350.00 plus 12 per cent penalty interest, and the sum of $1,600.00 as attorney's fees.

## On Motion for Rehearing

Appellee complains on motion for rehearing that we did not consider its cross-point that the award of $1,600.00 to appellant for attorney's fees for prosecuting this suit was excessive in view of the amount in controversy. Article 3.62 of the Insurance Code, Tex.Rev.Civ.Stat.Ann., authorizes the recovery of "reasonable attorney fees for the prosecution and collection" of such claim. This statute requires that the fee be reasonable under the particular circumstances of the case under consideration, and ordinarily the fee must bear some reasonable proportion to the amount involved. *Capitol Life Insurance Company v. Rutherford*, 468 S.W.2d 535 (Tex.Civ.App.—Houston [1st Dist.] 1971, no writ).

The award for attorney's fees is fully supported by the testimony of Oliver Heard, Jr., Esq. Mr. Heard examined appellant's file, with particular regard to the

amount of time spent on this case, and testified that a reasonable attorney's fee would be the sum of $2,550.00. Appellee did not cross-examine Mr. Heard or introduce any evidence to the contrary.

We cannot say that the amount of said fee is so out of proportion to the amount in controversy as to be excessive. Appellee's cross-point sixteen is without merit and is overruled.

Appellee's motion for rehearing is overruled.