**AETNA LIFE INSURANCE COMPANY, Appellant,**

v.

**Edwadine FORBAU, as Next Friend of Amy Miller, Appellee.**

No. 07–89–0336–CV.

Court of Appeals of Texas, Amarillo.

April 23, 1991.

Rehearing Overruled June 5, 1991.

Jones, Flygare, Galey, Brown & Wharton, Jeffrey B. Jones and John P. LeVick, Lubbock, for appellant.

Alton R. Griffin, Dewey D. Britt, Jr. and Ralph H. Brock, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and POFF, JJ.

POFF, Justice.

Amy Miller (Amy), through her mother and next friend, Edwadine Forbau, appellee, sued Aetna Life Insurance Company (Aetna), appellant, for denial of insurance benefits on a theory of breach of contract. In seventeen (17) points of error, Aetna appeals from a judgment awarding Amy damages and attorney's fees. In two (2) cross-points of error, Amy seeks additional damages which the Trial Court disallowed. We will sustain the tenth point of error, reverse the judgment and render the cause. Due to this result, we do not express any opinion as to the merit of the remaining unaddressed points of error (1–9 and 11–17) or the cross-points.

A brief review of the facts is necessary. Affiliated Foods, Incorporated (Affiliated) is a cooperative which serves its members

by providing competitive prices for wholesale groceries, expansion financing, group insurance, etc. Affiliated contracted with Aetna to offer insurance coverage under a group policy to Affiliated's members. E Triple M, Incorporated, a member of Affiliated, subscribed to this policy and offered coverage to its employees, including Mike Miller, Amy's father. In doing so, E Triple M paid a portion of the premiums for employees who opted to be covered by the policy. E Triple M paid the premiums for Mike Miller and his dependents, including Amy.

Under the terms of Aetna's insurance policy, Amy was a "covered individual." On March 13, 1985, Amy, who was fourteen (14) years old at the time, was seriously injured in a motor vehicle accident which required extensive medical treatment. Her treatment required extended stays in both the hospital and a rehabilitation clinic. Tragically, the accident left Amy as a permanently disabled, spastic quadriplegic in need of round-the-clock supervision.

Aetna paid the expenses submitted pursuant to the contract until April 30, 1986. Affiliated had terminated the contract with Aetna on April 30, 1985, but an extension of benefits clause in the contract required Aetna to continue to pay the expenses incurred for an additional year. Miller testified that he was notified that the insurance policy was being terminated on April 30, 1985 and that Aetna would continue to make payments until May 1, 1986 under the extension of benefits clause of the contract. Beginning May 1, 1986, insurance benefits were paid to Amy by Safeco Life Insurance Company (Safeco) as Aetna's successor for insurance coverage to Affiliated's members. Safeco's group policy was later converted to a personal policy for Amy. Ms. Forbau testified that after May 1, 1986, she submitted all necessary claims for payment of expenses to Safeco. She also testified that after May 1, 1986, no claims for payment of expenses had been submitted to Aetna.

After Safeco stopped paying insurance benefits, Amy filed suit against Safeco, but the suit was settled out of court. Amy then filed suit against Affiliated and Aetna alleging breach of contract, bad faith, Deceptive Trade Practice Act violations, and Insurance Code violations. Upon motions for summary judgment filed by both Aetna and Affiliated, the Trial Court granted judgment in favor of Affiliated in all respects and denied summary judgment as to Aetna. A jury was empaneled, and Amy's causes went to trial only against Aetna. After Amy presented her case in chief to the jury, Aetna moved for an instructed verdict which the Trial Court granted on all matters except Amy's cause of action for breach of contract and Aetna's motion for ERISA[1] preemption. Both sides closed, and Aetna reurged its grounds for an instructed verdict including the preemption ground which was again overruled by the trial judge. After the case was submitted to the jury, a verdict was returned which awarded Amy $283,000.00 in past damages, $2,500,000.00 in future damages and $500,000.00 in attorney's fees. After denying Aetna's motion for judgment *non obstante veredicto*, the Trial Court rendered judgment on that verdict from which Aetna appeals.

In its tenth point of error, Aetna argues that the Trial Court erred in granting judgment for Amy because the contract of insurance provided no benefits which Aetna failed to pay.[2] The issue in this case is whether the insured's right to recover benefits for her injury accrues as the expenses are incurred or whether the right to recov-

1. All references to ERISA are to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 (1982), unless otherwise noted.

2. Since we will sustain this point of error, Aetna's second point of error alleging ERISA preemption becomes immaterial because Amy's claim is a breach of contract cause of action which under ERISA is one for benefits due under a plan. Since an ERISA claim for benefits due would necessarily require application of the same principles of contract law, the result would not differ regardless of the ERISA preemption claim's outcome. *Gorman v. Life Insurance Company of North America, et al.,* 34 Tex.Sup.Ct.J. 457, 461 (March 30, 1991, *on motion for rehearing*). Consequently, we need not address the issue.

er all expenses resulting from the injury vests when an injury is sustained. If the insured's right accrued only upon incurring an expense, recovery is limited to those expenses incurred while the insured was covered by the policy, *i.e. while the policy was in effect.* Alternatively, if the right to recover accrued upon sustaining an injury while the policy was effective, liability under the contract exists for all naturally-resulting expenses regardless of the fact that the contract was terminated and no premiums have been paid since the spring of 1986.

Plaintiff's exhibit one (1) is a copy of the insurance contract in which Affiliated applied for "unlimited" coverage for "Comprehensive Medical Expenses" for its employees and their dependents. The pertinent portions of the policy are as follows:

1. On page 4100, "COMPREHENSIVE MEDICAL EXPENSE BENEFITS" are explained: "If Covered Medical Expenses are *incurred* ... for treatment of a *covered family member*, Aetna will pay ..." (*emphasis added*).

2. On page 3500, "Incurred Charge" is defined as: "The charge for a service or supply is considered to be incurred on the date it is furnished."

3. Page 4800 includes the "GENERAL EXCLUSIONS" which state that the "policy does not provide insurance for ... [c]harges incurred as to a person while he is not a covered family member."

4. On page 6000, a "TERMINATION OF COVERAGE" clause outlines that "[c]overage of an individual will terminate upon ... [d]iscontinuance of this policy as to such coverage."

Amy contends that the policy insured against the contingency of injury and not just "incurred" charges. Since the injury was sustained during the life of the policy,

Amy asserts that Aetna remained liable for covered medical expenses even after termination of the policy.[3] In her brief, Amy argues "that her right to unlimited comprehensive coverage became vested under the policy when she was injured during the life of the policy, and that cancellation of the group policy by Affiliated Foods, Inc., did not defeat her rights to benefits." *Citing Drinkard v. Group Hospital Service, Inc.,* 366 S.W.2d 637 (Tex.Civ.App.—Dallas 1963, *writ ref'd n.r.e.*).

Attempting to buttress her argument, Amy cites us to the contract clause on page 1850 labeled "OTHER CHANGES" and under the title "Addition or Deletion of a Benefit." She argues that the clause imposes liability on Aetna to pay for all expenses incurred as a result of her injury which was sustained while the policy was effective. The clause reads:

> If any *benefit* ceases to apply to an individual or a dependent, coverage for that benefit will cease immediately for that person but without prejudice to any rights under the benefit benefit [sic] established by the person while the coverage was in force. (*emphasis added*).

Based upon the "without prejudice" language, Amy argues that any cessation of benefits cannot affect her right of recovery because she became entitled to those benefits while the coverage was in force. Amy argues that this clause modifies or expands the clause defining incurred charge to the extent that her ongoing nursing expenses, which were covered medical expenses paid by Aetna while Amy was covered, should continue to be paid by Aetna. We do not so read the plain language of the clause.[4] The clause upon which Amy relies does not create any additional contractual benefit beyond that which she was otherwise entitled under the contract.

---

**3.** Such a policy would be more accurately classified as a disability policy as opposed to the medical expense policy contained in the instant facts.

**4.** This clause would only be pertinent if the policy was in effect, and a covered individual was receiving a particular *benefit* at a time

when that benefit was going to cease to be a provided by the policy. In such a case, which is not before us, cessation of the benefit would not accrue to the detriment of the individual who was receiving that particular benefit and who would continue to be covered by the remainder of the policy.

In the absence of ambiguity, insurance contracts are construed and interpreted as all other contracts. *Southern Life and Health Ins. Co. v. Simon*, 416 S.W.2d 793, 795 (Tex.1967); *State Farm Lloyds, Inc. v. Williams*, 791 S.W.2d 542, 545 (Tex.App.— Dallas 1990, *writ denied* ). Determination of the presence of an ambiguity is a question of law for the court. State Farm, *supra*. In answering this question, we must give the terms of the contract their ordinary meaning unless a clear intent to the contrary is manifested within the policy. *Southern Life, supra*. If the contract is written in concise, unambiguous language, we may not accept Amy's argument that the policy be construed most strictly against its drafter—Aetna. *Barnett v. Aetna Life Insurance Company*, 723 S.W.2d 663, 665 (Tex.1987).

We find that the words in the insurance policy are clear, unambiguous and susceptible of only one meaning which leaves nothing to be construed. *General American Indemnity Company v. Pepper*, 161 Tex. 263, 339 S.W.2d 660, 661 (1960). Thus, we need not resort to any rules of contract construction in order to interpret the instant policy because it clearly and unambiguously explains the use of the word "incurred." *Barnett, supra*. Therefore, we need look no further than the words used in the contract. Reading the contract as a whole, we find that Affiliated applied for and Aetna intended to provide benefits for covered medical expenses incurred by a covered family member. *See generally, Criswell v. European Crossroads Shopping Center, LTD., et al.*, 792 S.W.2d 945, 948 (Tex.1990) (intent of parties ascertained only by looking at entire contract). Under the explanation of benefits and the exclusion provisions of the policy, the meaning of "incurred" expenses or charges is essential in determining Aetna's duty to pay. The contract expressly provides that a charge is considered incurred when a service or supply is furnished.

The unambiguous language of the contract means that Aetna agreed to pay for covered medical services or supplies furnished to Amy while the policy was in effect. *Northwestern National Life Insurance Company v. Glenn*, 568 S.W.2d 693, 694 (Tex.Civ.App.—Fort Worth 1978, *writ ref'd n.r.e.*). The contract is devoid of any language which, once an injury was sustained, obligated Aetna to pay any and all covered medical expenses incurred after termination of the policy.[5] Inimically, the policy specifically states that: (1) Aetna will pay for covered medical expenses incurred for treatment of a covered family member; (2) no insurance is provided for charges incurred while a person is not a covered family member; and (3) an individual's coverage is terminated upon discontinuance of the policy.

In the instant case, Amy's reliance upon *Drinkard*, supra, is misplaced. That case is distinguishable because the *Drinkard* Court found the policy in question to contain a clause which could result in two (2) non-exclusive meanings both of which were compatible with the language of the contract. *Id.* at 639. Therefore, the policy was strictly construed against the insurer and in favor of the insured due to the lack of clarity in the policy. We find no ambiguity in the instant policy which would require us to similarly construe the policy. Aetna did specifically define "incurred charge" in a manner which is incompatible with the meaning ascribed to by Amy. Therefore, *Drinkard* is not controlling.

Amy also notes that this Court has previously held that "incurred" can mean all reasonable expenses caused by the accident. *Maryland Casualty Company v. Thomas*, 289 S.W.2d 652 (Tex.Civ.App.— Amarillo 1956, *writ ref'd n.r.e.*). In *Maryland*, the policy failed to define "incurred expenses," and the Court found that the incurred expenses meant all reasonable expenses incurred by the accident. The Court reasoned that the *Maryland* policy obligated the insurance company to pay all

---

**5.** Without express language in the policy to that effect, inferring such a result could open the door to unsuspected, potentially-limitless liability. Once a debilitating injury is sustained, an insured's continued payment of additional premiums would necessarily be gratuitous, and the insurer would remain liable for any and all covered expenses.

future medical expenses. *Id.* at 655. This holding was subsequently limited by this Court wherein we held that incurred expenses were only those expenses actually incurred or those future expenses which had been prepaid by the insured. *Riverside Insurance Company of America v. Cargill,* 570 S.W.2d 455 (Tex.Civ.App.— Amarillo 1978, *no writ*). Thus, *Maryland,* supra, is not controlling[6] because the instant policy defined "incurred charges" and Amy admits that she did not incur or prepay any charges during the life of the policy which Aetna failed to pay.

The testimony unquestionably reveals that all bills submitted to Aetna were paid. Additionally, all expenses incurred after May 1, 1986 were sent to and paid by Safeco. Since the unambiguous contract embraced liability only for expenses incurred while Amy remained a covered family member (prior to termination of the policy), we find that, as a matter of law, the contract provided no coverage which Aetna failed to pay as incurred or future expenses.

Sustaining Aetna's tenth point of error, we reverse the judgment of the Trial Court and render judgment that Amy take nothing.

---

**6.** Amy also relies on *Stanush v. Aetna Life Insurance Company,* 538 S.W.2d 648 (Tex.Civ.App.— San Antonio 1976, *writ ref'd n.r.e.*). However, since the *Stanush* opinion is founded upon this Court's holding in *Maryland,* supra, which we have distinguished, *Stanush,* supra, is not applicable to the instant case as well.