**Carla Diane TEZAK, as trustee for the heirs and next of kin of Martin Tezak, Respondent,**

**v.**

**Bruce BACHKE, et al., Appellants.**

**No. A04–2134.**

Court of Appeals of Minnesota.

June 21, 2005.

Timothy A. Little, Little & Tierney, P.A., Duluth, MN, for respondent.

John D. Kelly, Kenneth A. Kimber, Hanft Fride, P.A., Duluth, MN, for appellants.

Considered and decided by STONEBURNER, Presiding Judge, HUDSON, Judge, and DIETZEN, Judge.

## OPINION

STONEBURNER, Judge.

Appellants, who are liable for a decedent's special damages arising out of an automobile accident, challenge the district court's summary judgment determination that respondent may recover, as special damages under Minn.Stat. § 573.02, subd. 2, the full amount of decedent's reasonable medical expenses related to the accident rather than the amount for which the dece-

dent's health insurer settled the medical providers' claims for those expenses.

## FACTS

The parties submitted this matter to the district court based on stipulated facts. Respondent is trustee for the heirs and next-of-kin of Martin Tezak. Tezak was injured when the automobile he was driving was struck by an automobile driven by appellant Jill Bachke. Appellant Bruce Bachke is the owner of the vehicle driven by Jill Bachke and he consented to Jill Bachke's use of the vehicle. Tezak was not negligent. The collision was caused, at least in part, by Jill Bachke's negligence. Tezak incurred medical expenses in excess of $100,000 related to the accident.[1] Tezak initiated a lawsuit against appellants but died of causes unrelated to the accident before that lawsuit was completed, and the lawsuit was dismissed. Tezak's health insurer settled all claims for medical expenses related to the accident for $32,000.

Respondent, as trustee for the heirs and next-of-kin of Tezak, purchased the health insurer's subrogation rights and initiated this action against appellants under Minn. Stat. § 573.02, subd. 2 (2004), for special damages, including the full amount of medical expenses billed to Tezak by medical providers. Appellants sought to limit respondent's claim for medical expenses to the $32,000 amount for which the medical bills were settled by Tezak's health insurer.

The district court determined that respondent may claim the full amount of expenses billed. Judgment was entered consistent with the parties' stipulation, in which respondent agreed to limit her claim to $100,000, and this appeal followed.

## ISSUE

May the trustee for the heirs and next-of-kin of a person who is injured in an automobile accident and who dies of causes unrelated to the accident, after acquiring the subrogation rights of the decedent's health insurer, pursue a claim for the full amount of medical expenses incurred by the decedent as a result of the accident?

## ANALYSIS

■ When a district court grants summary judgment based on the application of a statute to undisputed facts, the district court's decision is purely a legal conclusion reviewed de novo. *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn. 1998). The issue presented in this case is one of first impression in Minnesota.

■ Minn.Stat. § 573.02, subd. 2 (2004) provides:

When injury is caused to a person by the wrongful act or omission of any person ... and the person thereafter dies from a cause unrelated to those injuries, the trustee ... may maintain an action for special damages arising out of such injury if the decedent might have maintained an action therefore had the decedent lived.

" 'Special damages' are those damages to which an exact dollar amount can be assigned, such as medical expenses or lost wages to date of death." *Deal v. Northwood Children's Home Soc'y.*, 608 N.W.2d 922, 925 n. 1 (Minn.App.2000), *review denied* (Minn. June 13, 2000).

Appellants rely on general principles governing compensatory damages to argue that respondent's claim should be limited to damages for which a person has actual

---

1. Tezak's no-fault insurer paid $20,000 for his medical expenses. That payment and set-off for that payment is not at issue in this lawsuit.

losses. *See, e.g., Phelps v. Commonwealth Land Title Ins. Co.,* 537 N.W.2d 271, 275 (Minn.1995) (noting that compensatory damages are generally synonymous with actual damages, but damages may be multiplied when statute provides for multiplication of actual damages to arrive at compensatory damages). Appellants also rely on cases that hold that parties should not receive "double recovery" of damages. *See, e.g., Imlay v. City of Lake Crystal,* 453 N.W.2d 326, 332 (Minn.1990) (noting that stated purpose of collateral-sources statute, Minn.Stat. § 548.36, is to prevent double recoveries by plaintiffs, which is a legitimate purpose).

No Minnesota cases have addressed the issue of whether a trustee may recover from the person who caused the accident, as special damages under Minn.Stat. § 573.02, subd. 2, the full amount of medical expenses incurred as a result of the accident when medical providers have settled for less than the full amount. But in a case involving a claim for economic-loss benefits under Minn.Stat. § 65B.46, subd. 1 (2000), which provides for basic economic-loss benefits for persons who suffer loss from an injury arising out of the maintenance or use of a motor vehicle, the supreme court declined to allow a tortfeasor to benefit from a settlement agreement between an injured party's health insurer and medical providers and allowed full recovery of medical expenses incurred. *Stout v. AMCO Ins. Co.,* 645 N.W.2d 108 (Minn.2002).

The decision in *Stout* is based primarily on an analysis of the language of the No Fault Act. The Act makes economic-loss benefits payable on a monthly basis as the loss accrues and provides that loss accrues as medical expense is incurred. Minn. Stat. § 65B.54, subd. 1 (2004). The supreme court held that "[a] reduction in the amount billed, whether obtained pursuant to a settlement agreement or a health insurer's fee schedule, does not modify the amount of medical expense incurred." *Stout,* 645 N.W.2d at 113. *Stout* relied on the reasoning in *Collins v. Farmers Ins. Exch.,* 271 Minn. 239, 135 N.W.2d 503 (1965). *Id.* at 112–13. In that case, Collins, the insured, sued an insurance company to recover medical expenses under an automobile policy that provided $5,000 worth of coverage for "reasonable [medical] expenses actually incurred." *Collins,* 271 Minn. at 240–41, 135 N.W.2d at 504–05. Collins was billed in excess of $5,000 by medical providers but was able to settle the provider's claims for $2,250. *Id.* at 241, 135 N.W.2d at 505. The insurer claimed that the expense Collins incurred was the amount Collins paid pursuant to the settlement, but the supreme court stated that the definition of "incur" is " 'to become liable for' as distinguished from actually 'pay for.' " *Id.* at 244, 135 N.W.2d at 507. The holding in *Collins* is that the insured became liable for, and therefore incurred, the amount originally billed, and not the amount Collins paid as a result of a collateral transaction. *Id.*

The supreme court in *Stout* noted that under case law in Minnesota, "if there is to be a windfall either to an insurer or to an insured, the windfall should go to the insured" because it is more just " 'that the insured who has paid a premium should get all he paid for rather than that the insurer should escape liability for that for which it collected a premium.' " 645 N.W.2d at 114 (quoting *Van Tassel v. Horace Mann Ins. Co.,* 296 Minn. 181, 187, 207 N.W.2d 348, 352 (1973)). Recognizing that Stout, the insured, had not paid a premium for the coverage provided, the supreme court nonetheless concluded that it was more just that any windfall should go to Stout rather than the insurer of the vehicle that struck him. *Id.* at 114–15. Although *Stout* and *Collins* are distinguishable from

the case before us, which does not involve the construction of the No Fault Act or an insurance policy, the cases are instructive.

■ In this case, we must determine whether the amount of medical expenses recoverable as special damages under Minn.Stat. § 573.02, subd. 2, is the reasonable amount billed by the providers or the amount by which those bills were settled by a health insurer prior to initiation of the action under Minn.Stat. § 573.02, subd. 2. We conclude that resolution of this issue turns on whether the collateral-source statute or the common-law collateral-source rule applies to the difference between the amount billed and the amount for which the bills were settled.

■ We first note that the collateral-source statute applies to the $32,000 for which the health insurer settled the medical provider's claims. Minn.Stat. § 548.36, subd. 1 (2004) (defining collateral source as "payments related to the injury ... in question made to the plaintiff, or on the plaintiff's behalf up to the date of the verdict."). Under the collateral-source statute, however, the parties agree that the $32,000 paid by the health insurer will not be set off from any recovery by respondent because respondent obtained the health insurer's subrogation rights.[2] Re-

spondent's right to recover the $32,000 is not disputed. The issue is whether respondent can recover the $68,000 gap between what the medical providers billed decedent[3] and the $32,000 paid by decedent's health insurer to settle the medical providers' bills.[4]

■■ We next conclude that the collateral-source statute does not apply to the $68,000, because the gap between the bills and the settlement was not a payment made to anyone and therefore is not a collateral source as defined by the statute. Minn.Stat. § 548.36, subd. 1; *Smith v. Am. States Ins. Co.*, 586 N.W.2d 784, 786 (Minn.App.1998), *review denied* (Minn. Feb. 18, 1999) (holding that payments not yet received due to insurer's denial of coverage or discontinuation of payments based on insured's failure to show continued entitlement to benefits are not collateral sources under statutory definition because they have not been paid). Although the collateral-source statute abrogated the common-law collateral-source rule in some situations, when benefits are not subject to the collateral-source statute, the common-law collateral-source rule still applies. *Smith*, 586 N.W.2d at 786. Under the common-law rule:

2. The collateral-source statute excludes the deduction of collateral-source amounts paid for the benefit of the plaintiff for which a subrogation right has been asserted. Minn. Stat. § 548.36, subd. 2(1) (2004). And because respondent acquired the subrogation rights of decedent's health insurer, the health insurer's subrogation rights are considered to have been "asserted" in this case. *See Buck v. Schneider*, 413 N.W.2d 569, 570–71 (Minn. App.1987) (holding that injured employee who was assigned employer/insurer subrogation rights to workers' compensation payments had asserted the subrogation right within the meaning of subdivision 2(1) in suit against third party responsible for his injuries).

3. The parties stipulate that decedent was billed in excess of $100,000 but respondent has agreed to limit her claim to $100,000, therefore we are using $100,000 as the amount billed for purposes of our analysis.

4. The dissent would preclude this recovery because the health insurer would not have been able to assert a subrogation claim for this gap, overlooking the fact that respondent is not suing to assert the health insurer' subrogation claim, but is suing for special damages that decedent could have sued for had he lived. Nothing in the wrongful-death statute places a limitation on respondent's claim that would not have applied to decedent. Minn. Stat. § 573.02, subd. 2.

'if the plaintiff's special damages ... such as hospital or medical expenses or loss of wages, are paid for by some third person, either as a gift or on the basis of some contractual obligation, this circumstance does not bar the plaintiff from recovering this item from the defendant, even though it may in effect accord to the plaintiff a double benefit or a double recovery.'

*Id.* (quoting *Beschnett v. Farmers Equitable Ins. Co.*, 275 Minn. 328, 332, 146 N.W.2d 861, 864 (1966)).

Appellants argue that the gap between the amount billed and the settlement in this case does not fall under the common-law collateral-source rule because, as with the collateral-source statute, it was not "paid" to anyone. But in the context of a lawsuit against tortfeasors to recover for injuries sustained in an automobile accident, the supreme court has held that under the common-law collateral-source rule, a father had a right to recover special damages for the reasonable value of medical expenses for care provided to his injured son, although the provider (Shriner's Hospital) did not charge the family anything for the child's care. *Hueper v. Goodrich*, 314 N.W.2d 828, 831 (Minn.1982) (citing *Dahlin v. Kron*, 232 Minn. 312, 45 N.W.2d 833 (1950) for the proposition that a plaintiff could recover the reasonable value of medical services provided by a hospital even though those services were rendered gratuitously by the hospital).

We do not see a distinction between the value of services gratuitously rendered in the cases cited above and the $68,000 debt extinguished by the action of decedent's health insurer in this case, and we conclude that the $68,000 difference between the amount billed and the amount paid is covered by the common-law collateral-source rule. *See Duluth Steam Coop. v. Ringsred*, 519 N.W.2d 215, 217 (Minn.App.

1994) (quoting Restatement (Second) of Torts § 920A(2) (1979), for the proposition that the "tortfeasor's responsibility to compensate for all harm that he causes [is] not confined to the net loss that the injured party receives," and that "[t]he law does not differentiate between the nature of the benefits, so long as they did not come from the defendant or a person acting for him").

Our conclusion is consistent with *Foust v. McFarland*, 698 N.W.2d 24 (Minn.App. June 14, 2005), an opinion released after this case was submitted. In that personal-injury case arising out of an automobile accident, appellants requested a set off from a jury award of past medical expenses for $72,481.27 billed by medical providers but discounted pursuant to an agreement between the medical providers and the injured person's health insurer. *Id.*, at 29. As in this case, we noted in *Foust* that the collateral source statute does not prohibit double recoveries in all instances. *Id.* at 35 (citing *Smith v. American States Ins. Co.*, 586 N.W.2d 784, 786 (Minn.App.1998)). And we concluded that appellants were not entitled to a deduction for medical charges billed by medical providers but not paid for. *Id.* at 36.

In this case, the district court appropriately analyzed this case under the common-law collateral-source rule and correctly concluded that respondent may recover as special damages the value of the reasonable medical services provided to decedent in the amount stipulated to by the parties.

## DECISION

Under the common-law collateral-source rule, which governs this case, respondent is entitled to recover the full amount of medical expenses billed for decedent's injuries arising out of the accident (subject to the stipulated limit) as special damages

in her action under Minn.Stat. § 573.02, subd. 2 (2004).

**Affirmed.**

DIETZEN, Judge (dissenting).

I respectfully dissent. Respondent-trustee asserts subrogation rights she acquired from decedent's health insurer, which had previously settled and discharged decedent's outstanding medical bills that exceeded $100,000, for $32,000. The issue in this case is whether "special damages" under the Wrongful Death Act (WDA), Minn. Stat. § 573.02, subd. 2 (2004), extend beyond the subrogation rights purchased by respondent to include a financial windfall of $68,000, which amount was not paid to discharge the bills. Because I conclude that "special damages" do not extend beyond the amount actually paid to purchase the subrogation rights, I dissent. Two reasons support my conclusion.

First, statutory interpretation results in the conclusion that "special damages" are limited to medical expenses actually paid. The WDA is in derogation of the common law, which barred "a right of recovery for death by wrongful act." *Cashman v. Hedberg*, 215 Minn. 463, 466, 10 N.W.2d 388, 390 (1943); *see also Hachmann v. Mayo Clinic*, 150 F.Supp. 468, 469 (D.Minn.1957) (applying state law) ("The [WDA] is purely a creature of the legislature and is in derogation of the common law."). Statutes in derogation of the common law are strictly construed. *Rosenberg v. Heritage Renovations, LLC*, 685 N.W.2d 320, 327–28 (Minn.2004) ("[I]t is not presumed that the legislature intended to abrogate or modify a rule of the common law on the subject any further than that which is expressly declared or clearly indicated.") (alteration in original) (quoting 73 Am. Jur. 2d *Statutes* § 191 (2001)).

In two older cases, the supreme court stated that the WDA "is remedial in character and thus requires a liberal construction." *Shumway v. Nelson*, 259 Minn. 319, 322, 107 N.W.2d 531, 533 (1961); *Bolinger v. St. Paul & Duluth R.R. Co.*, 36 Minn. 418, 421, 31 N.W. 856, 857 (1887). But those cases were limited to determining who could bring a cause of action under the WDA and did not address whether the damages allowable under the statute extended to include a windfall recovery. *Shumway*, 259 Minn. at 323, 107 N.W.2d at 534; *Bolinger*, 36 Minn. at 421, 31 N.W. at 857. In this case, the dispute is not whether respondent may maintain an action under the WDA, but whether the WDA limits respondent's damage award to her actual out-of-pocket medical expenses.

According to state law, "[a] cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists, except as provided" by the WDA. Minn.Stat. § 573.01 (2004). Because decedent's medical expenses arose out of injuries caused by the wrongful act of another, respondent's sole remedy to recover those expenses is under the WDA. In short, the decedent's trustee "may maintain an action for *special damages* arising out of such injury if the decedent might have maintained an action therefor had the decedent lived." Minn. Stat. § 573.02, subd. 2 (emphasis added). "Special damages" are not defined by statute. Recent caselaw holds that "special damages" include "those damages to which an exact dollar amount can be assigned, such as medical expenses." *Deal v. Northwood Children's Home Soc'y*, 608 N.W.2d 922, 925 n. 1 (Minn.App.2000), *review denied* (Minn. June 13, 2000). Clearly, the WDA only provides a limited right of recovery to the decedent's surviving spouse and dependents. For example, pain and suffering and loss of wage-earning potential are not recoverable. Minn.Stat. § 573.02, subd. 2 (providing that trustee

may only receive special damages). It is axiomatic that limited statutory rights cannot be expanded beyond their strict construction.

Respondent asks us to interpret "special damages" under the WDA to extend beyond her out-of-pocket expenses to allow a financial windfall of $68,000. The object of all statutory interpretation and construction is to "ascertain and effectuate" the intent of the legislature. Minn.Stat. § 645.16 (2004). Here, I discern no legislative intent to provide a financial windfall to respondent that exceeds the actual medical expenses already paid. Consequently, I would not construe legislative intent to abrogate the common law absent a clear legislative intent to do so.

The majority construes the No Fault Act, the collateral-source statute, and collateral-source common law to conclude that respondent is deserving of a financial windfall. But the legislative intent of the No Fault Act and the collateral-source statute, as well as collateral-source common law, do not substitute for the legislative intent of the WDA. *See id.* Instead, the crux of this case is the statutory interpretation of the WDA. And the WDA creates a limited right of recovery for the surviving spouse and dependents of the decedent. Given that statutes in derogation of common law are to be strictly construed, it follows that respondent is only entitled to "special damages" for the out-of-pocket medical expenses that were paid by decedent's health insurer.

Second, since respondent is pursuing the subrogation rights of decedent's health insurer she is only entitled to the rights, as limited by the WDA, that the insurer had to pursue. The subrogation rights restrain respondent's recovery in two ways. First, the WDA limits the ability of respondent and decedent's health insurer to recover "special damages" under the WDA. By purchasing the subrogation rights from the medical insurer, respondent cannot evade the limits already imposed by the WDA. Second, as the subrogee, respondent stands in the place of the health insurer and is entitled to the insurer's rights and remedies, but is entitled to no further rights. *See Black's Law Dictionary* 1467 (8th ed. 2004) (defining subrogation as "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy"). Since subrogation rights are limited to the amount paid, respondent only purchased the right to pursue the $32,000 that was paid by the medical insurer.

Because I conclude that "special damages" of the WDA do not extend past the subrogation rights that respondent purchased from decedent's health insurer, I would reverse and remand for the district court to enter judgment for respondent in the amount of $32,000.